Juwsé Geaham
delivered the opinion of the Court.
Daniel Adams,- a citizen and r-esident of Missouri, having died, letters of administration on his -estate were, by the proper Court in that State, granted to Bland. It is proved that his heirs do not reside'in this Staj.e, and are supposed to be in Missouri. At the -time of his death he owned a slave in Kentucky, and some money for her hire was due to him. Bland visited Kentucky, collected the money, and .received the slave into his possession. But being advised that it was necessary for him to be appointed administrator by the County Court in this State, where the slave then was, he applied for and obtained letters of administration from the' Garrard County Court, and executed, the usual administration bond with Abraham Adams his surety. The' administrator sold the slave, and as part and principal pay therefor, received a promissory note due from a resident of Missouri. It seems that after his return to1 Missouri, he collected the sum due on the note, and some years thereafter died. This suit was brought by the heirs of Daniel Adams, (they being also non-residents,) against the administrator and his surety, to recover the value of the slave and her reasonable hire, &c. It is charged in the bill, not denied in the answer, nor contradicted by proof, that the intestate died free from debt. It was agreed that no objection should be taken either because the administrator was dead at the commencement of this suit, or because his representatives were not made parties to it. The Court dismissed the complainant’s bill.
A foreign, administrator lias no right to sue except in virtue of our statute authorizing him to do so — argu.
The law of the domicil of the deoedentgoverns in the distribution of personal estate: (IQ Pickering, 100) but under the authority of the Court where there may be auxiliary administration: (3 Ibid, 128.) The ancillary administration should be completed, & any surplus remitted to the administrator of the domicil: (7 Dana, 315.)
The only question of law made in the cause, is, whether the surety in the bond of Bland executed upon the administration granted in this State, is liable to the distributees, dr whether they must resort to the primary and domiciliary administration granted in Missouri.
Letters of 'administration granted abroad give no authority to sue in another jurisdiction, except where the local law has conferred that authority, as has been done in this State; but this fact does not settle the question of distribution. All.the authorities concur in the proposition that debts in a country foreign from the domicil, must be collected and paid according to-the law of that country: 2 Kent, 432; but how and in what place the surplus remaining in the hands of the ancillary administrator, after paying debts, is to be distributed, is another and very different question.
In the case of Jennison vs Hopgood, (10 Pickering 100,) it is said the lex domicilie and not the lex loci rei sitae, must govern in the distribution of the personal estate of a deceased person among his heirs, and that this distribution is to be made under the authority of the Court within whose jurisdiction the deceased had his domicil; it not being competent for a Court granting an auxiliary administration to order a distribution of the estate among the heirs. See also 3 Pick. 128. Other authorities do not lay down the rule quite so explicitly or broadly. In Harvey vs Richards (1 Mason's reports 408,) as quoted in 2 Kent 432, it is said “that whether a Court of equity would proceed to an account and distribution according to the lex loci rei sitae, or direct the assets to be distributed by the foreign tribunal of the domicil of the party, would depend upon circumstances. The sitae rei as well as the presence of the parties, conferred a competent jurisdiction to decree distribution according to the rule of the lex domicilie; and such a jurisdiction, was sustained by principles of public law, and was consistent with international policy. The Court was not bound, at all events, to have the assets remitted 'to the foreign administrator, and to send the parties abroad at great expense and delay, to *79 í,eék their rights in a foreign tribunal, and whether the Court here ought to decree the distribution, or remit the property abroad, was a matter of judicial discretion, and there was no universal rule on the subject.” The same doctrine and almost in the same words is recognized in 1 Story’s equity 651—2. In Story’s conflict of laws, ch. 13, sec. 513, the-conflicting authorities are collected in notes, but the 'author seems to quote with decided approbation and at great length the opinion by Chief Justice Parker in 10 Pickering, above referred to, and in which, as already stated, it is definitely decided that distribution of assets among the heirs must be made under the domiciliary administration. We have been referred to the case of Fletcher’s Adm’r. vs Sanders and Weir, (7 Dana 345,) as deciding conclusively that an ancillary administrator, appointed by a County Court in this State, may be compelled to distribute the estate in his hands among the heirs. By a careful examination of that case it will be seen that this question was not decided. It was there determined that Weir, the surety in the bond, was not liable for foreign assets received by the ancillary executor, and that the assets received here by him, having been paid out, the surety was not liable; but in that opinion, page 349, the Court quoting from Story’s conflict of laws, say: “whoever shall be the administrator appointed to administer assets in any other country than that of the domicil, his administration will be ancillary to that of the domicil, and therefore, if after accounting according to the local law, any residuum of assets shall remain in the hands of the ancillary administrator, they will belong to the domicil, and should be transmitted to the principal administrator there, to be finally administered or distributed according to the law of the domicil.”
An administrator who is such in Missouri, administered in Kentucky * received assets, and was, yith hi_s surety, lucky for distilureeTresidingki 5iatS°the: assets received in Ken-lucky were received as adminsouri^aiid that Kentuckyty was not liable.
*79 In the case now before us the facts do not exist which in the case of Harvey vs Richards seemed to influence the Court in their decision. The heirs in this case, as is proved, do not reside in this Slate, nor Is the ancil» *80 lary administrator a different person from that of the domiciliary administrator. He is one and the same person, he had received the property before he administered in this State, and all the rules which direct the surplus to be paid, or even authorize the delivery of property by the ancillary to the domiciliary administrator apply foil force. No debts existed in this State against the estate of Adams, and of course none were ° , , paid; but the whole amount received by Bland was to be distributed among the heirs. In such case the authorities are full, that whether an ancillary administrator be or be not compelled to remit the funds to the domiciliary administrator, yet if he does so remit them, ho has discharged his duty, and is no longer responsible for their appropriation. If in this case, some other person had been appointed administrator by the Garrard County Court, and he had remitted the' property to Bland, it would be clear that neither he or his surety would be liable to distributees, although he would have been liable to creditors, had there been any such.
The presumption of law would be, that as Bland was the administrator in both characters, he should be regarded as holding the property upon his return to Missouri as domiciliary administrator, because to the latter the heirs look for distribution. But there is scarcely room for presumption. All the facts clearly prove that he desired to receive the property by virtue of his administration in Missouri, and that he administered in this State for no other purpose, and with no other view than that of taking the property or its proceeds to Missouri, to be there held and distributed by him under and by virtue of his first appointment. It is urged that it docs not appear that he gave bond in Missouri. In the facts agreed by the parties to this suit, it is admitted “ that Bland duly qualified as administrator of Daniel Adams’estate before the proper Court in Pike county, Missouri, that being the county ■of said Adams’ residence at his death.” We are not authorized to indulge in any presumption that the con *81 ■stituted authorities of Missouri did not secure >theiereditors and distributees, so far as the laws of that-,State imay have authorized them to do. Whether he did or did not give security, we are not informed nor ¡ean we •enquire. Upon the whole case, it seems to us that the Circuit Court did not err in dismissing the complainant’s bill. But it is assigned !by cross error ithat the Court erred in not decreeing costs against the complainants. We suppose the defendant was entitled to his costs, and that the Court should have so ¡ordered. Upon the original errors assigned, the decree -of the Circuit Court is affirmed, and is reversed on the cross error with directions to that Court to give a decree for costs to the defendant.
Turner for plaintiffs; Harrison for defendants.